IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTEL R.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00378 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Christel R. ("Christel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Christel alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess her mental impairments; (2) determine her RFC, including using a function-by-function analysis; and (3) assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 26), and **DENYING** Christel's Motion for Summary Judgment (Dkt. 22).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Christel failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Christel filed for DIB in April 2016, claiming her disability began on January 5, 2013[4], due to rheumatoid arthritis ("RA"), asthma, low back pain from recent injury, hypothyroidism, and anxiety/depression. R. 232, 246. Christel's date last insured was September 30, 2016; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 25, 276; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Christel's application at the initial and reconsideration levels of administrative review. R. 121–40, 142–59. On October 31, 2018, ALJ David S. Lewandowski held a hearing to consider Christel's claim for DIB. R. 45–83. Counsel represented Christel at the hearing, which included testimony from vocational expert Asheley Wells. On June 11, 2019, the ALJ entered his decision analyzing Christel's claim under the familiar five-step process[5] and denying her claim for benefits.[6] R. 25–38.

The ALJ found that Christel was insured at the time of the alleged disability onset and that she suffered from the severe impairments of cervical herniation status-post fusion, lumbar degenerative disc disease, RA, obesity, asthma, left ankle fracture, major depressive disorder,

---

[4] Christel initially alleged a disability onset date in July 2012 but amended her alleged onset date to January 5, 2013 at the hearing with the ALJ because of a prior ALJ decision dated January 4, 2013. R. 25, 50.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Christel was 46 years old on her date last insured, making her a younger person under the Act. R. 36.

3

generalized anxiety disorder, panic disorder, and somatic symptom disorder.[7] R. 28. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. Id. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 1.04 (disorders of the spine), listing 3.03 (asthma), listing 1.06 (fractures), listing 14.09 (inflammatory arthritis), listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.07 (somatic symptom and related disorders). R. 28–29. The ALJ found that regarding her mental impairments, Christel had moderate limitations in concentrating, persisting, or maintaining pace, and adapting or managing oneself, a mild limitation in interacting with others, and no limitation in understanding, remembering, or applying information. R. 30–31.

The ALJ concluded that Christel retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 31. Specifically, Christel can perform occasional postural activities, occasional pushing and pulling with the upper extremities, and occasional overhead reaching, but cannot crawl or climb ladders, ropes, or scaffolds. Id. She can frequently reach, handle, and finger, but should avoid concentrated exposure to extreme heat, humidity, pulmonary irritants, and industrial hazards. Id. Christel can understand, remember, and carry out simple instructions, perform simple one or two-step repetitive tasks, adapt to occasional changes in the customary workplace, and is expected to be off task less than 10% of the workday. Id. The ALJ determined that Christel was unable to perform her past relevant work as a teacher's aide and secretary but could perform jobs that exist in significant numbers in the national economy, such as mail clerk, office helper, and library shelving clerk. R. 36–37. Thus, the ALJ determined

---

[7] The ALJ found that Christel's fibromyalgia, right ankle osteoarthritis, and hypothyroid were non-severe impairments. R. 28.

that Christel was not disabled. R. 37–38. Christel appealed the ALJ's decision and the Appeals Council denied her request for review on April 24, 2020. R. 11–13.

## ANALYSIS

Christel alleges that the ALJ failed to properly assess her mental impairments, determine her RFC using a function-by-function analysis, and assess her allegations regarding her symptoms.

### A. Medical History Overview

1. Medical Treatment

Christel was diagnosed with RA in 2003, years prior to her alleged disability onset date in 2013 and has a history of back and neck pain. R. 320–324, 406. She was in a motor vehicle accident in January 2013, after which Christel reported neck pain, low back pain, and headaches, and saw a chiropractor for a few months. R. 555–57. In March 2013, an MRI of Christel's spine showed a large disc herniation of the cervical spine and a small herniation of the lumber spine. R. 558–59, 799. In April 2013, Christel underwent neck surgery, including an anterior cervical diskectomy and fusion. R. 799–800. She reported that her neck pain largely resolved following the surgery and showed improved gait. R. 786–88. She had continued complaints of low back pain, which were attributed to the motor vehicle accident, and was prescribed physical therapy. Id. In August 2013, Christel fell and suffered a displaced fracture in her ankle which required surgical repair. R. 459–61. Thereafter, Christel participated in several courses of physical therapy for back, neck, ankle, and shoulder pain throughout the relevant period.

2. Medical Opinions

In July 2016, Shawne Bryant, M.D. performed a consultative physical examination.

R. 514–17. Dr. Bryant provided a functional assessment indicating that Christel could stand and walk a total of two to three hours in a workday and lift and carry10 to 15 pounds frequently and 20 to 25 pounds occasionally. R. 517. The ALJ gave this opinion some weight, noting that Dr. Bryant questioned whether Christel was "providing full effort" regarding the range of motion exam. R. 35, 515.

In August 2016, Deborah A., Bremer, Psy. D. performed a consultative psychological examination. R. 518–22. Dr. Bremer reported that Christel had a mixture of either no limitations, moderate limitations, or marked limitations in understanding and memory, concentration and persistence, social interaction, and adaptation. R. 522. The ALJ gave this opinion some weight, but noted he gave her opinions of marked limitations less weight because they were inconsistent with Dr. Bremer's findings of intact memory and an ability to do simple math. R. 35.

State agency physicians Gene Godwin, M.D. and Jack Hutcheson, M.D., in September 2016 and January 2017, respectively, reviewed the record and found Christel capable of a limited range of light work. R. 133–34, 153–54. State agency psychologists Stonsa Isinna, Ph.D., and Leslie Montgomery, Ph.D., also reviewed the record and found Christel's overall functioning was moderately limited, and she could complete simple, repetitive tasks, consisting of one to two steps. R. 131, 135–36, 150, 155–56. The ALJ gave all the state agency doctors' opinions some weight. R. 35.

**B. Mental Impairments under SSR 96-8P**

Christel argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P.[8] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims,

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20

6

SSR 96-8P (S.S.A. July 2, 1996). Specifically, Christel argues that the ALJ failed to properly consider her moderate limitations in concentration, persistence, or pace and adapting or managing oneself by "only address[ing] the skill level of work and . . . not [Christel's] ability to sustain work activity over the course of an eight-hour workday."[9] Pl.'s Br. at 18, Dkt. 23.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th

---

C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[9] Christel also makes a passing reference to the ALJ's failure to properly consider her "moderate limitations in social functioning" (Pl.'s Br. at 18–19, Dkt. 23), however, Christel includes no argument to specifically support this claim, and moreover, the ALJ found only mild limitations in interacting with others. R. 30.

Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis.[10] Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations in concentration, persistence, or pace, Christel is capable of performing the basic mental demands of light work, with the specified accommodations. Further, here the ALJ explained why Christel's moderate limitations in concentration, persistence, or pace, and adapting or managing

---

[10] The Commissioner also points out that the regulations have changed since Mascio, "clarifying that a 'moderate' rating means that the individual has a 'fair' ability to sustain concentration, persistence, or pace 'independently, appropriately, effectively' and 'on a sustained basis.'" See C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(2).

oneself did not translate into a limitation in the RFC beyond being able to understand, remember, and carry out simple instructions, perform simple one or two-step repetitive tasks, adapt to occasional changes in the customary workplace, and being off task less than 10% of the workday. R. 31. The ALJ adequately supported his finding that Christel could sustain her simple, routine tasks over a normal workday, and accounted for Christel's moderate impairments in his hypothetical questions to the VE and the RFC finding in his ruling.

The ALJ referenced the Fourth Circuit's ruling in Mascio and its potential impact on the ability to remain on task. The ALJ noted that Christel's activities of daily living, including driving, doing household chores, and paying bills[11], support that she can perform simple tasks, and that he factored her moderate concentration, persistence, or pace limitations into the RFC by limiting her to performing simple, routine, repetitive tasks, as well as by being off task less than 10 % of the workday. R. 36. However, the ALJ specifically explained that the RFC does not include a pace limitation because he finds Christel does not have "a significant deficit in this area." Id.

Christel takes issue with the weight the ALJ gave to Dr. Bremer's decision, emphasizing Dr. Bremer's opinion that Christel has a marked limitation in her abilities to complete a normal workday or workweek and deal with the stressors in competitive employment. However, the ALJ explained how he considered Dr. Bremer's opinion, acknowledging Dr. Bremer's finding that Christel's thought process was not always relevant or goal directed, was preoccupied with pain, and had delayed recall and made mistakes on the serial 7s, but noting that she found Christel's memory and ability to do simple math intact, as well as good judgment. R. 34. The ALJ

---

[11] At the hearing, Christel testified that from 2013 to 2016, her date last insured, she would "push herself" to do chores and other daily activities but would often have pain the next day. R. 66–67. However, by the time of the hearing in 2018, she said she was more careful not to overdo it, and usually only does these things with assistance from a family member, though she still drives occasionally, as before. R. 67.

9

explained that Dr. Bremer's assessment of marked limitations was inconsistent with her own findings. R. 35. Specifically, Dr. Bremer found only moderate limitations in Christel's ability to concentrate and carry out instructions, sustain a normal routine, and maintain attention and concentration, but then found her "preoccupation with her pain" interferes with her "being able to remember her job on a consistent basis" and found marked limitations in her ability to complete a normal workday or workweek. R. 522. Likewise, regarding adaptation, Dr. Bremer found no limitations in Christel's ability to respond appropriately to changes in the work setting, but then wrote Christel "would have marked limitations in her ability to deal with more stressors that would occur if she were working competitively." R. 522. Further, the ALJ gave some weight to the state agency psychologists who explained that, while Christel would "likely struggle with sustaining concentration for extended periods of time" she was capable of completing simple tasks consisting of one to two steps. R. 136.

Christel also argues that the ALJ failed to explain how the RFC accommodates her moderate limitations in adapting or managing herself. In this domain, the ALJ acknowledged Christel's hearing testimony that her anxiety affected her ability to drive, but noted that Christel still testified she drove, did household chores, and paid bills during the relevant period. R. 31. The ALJ also relied on Dr. Bremer's findings that Christel had "no limitation in the ability to adhere to the basic standards of neatness and cleanliness" and respond appropriately to changes in a work setting. Likewise, the ALJ referenced Dr. Bremer's conclusion that Christel was under a "great deal of stress" and was being treated for depression and anxiety, but had only limited mental health treatment during the period at issue, to find that Christel had a moderate limitation in this domain. On balance, these support the RFC accommodations, including adapting to only occasional changes in the customary workplace. R. 31, 34.

10

Here, the ALJ's RFC is supported by substantial evidence, including his explanation related to the consultative examiner Dr. Bremer, the state agency psychologists, and consideration of the record evidence.

**C. Physical RFC and Function-by-Function Analysis**

Christel argues that the ALJ's physical RFC findings are not supported by substantial evidence. In support, Christel points to her testimony regarding her pain, difficulty walking, sitting, and using her hands, as well the findings of consultative examiner Dr. Bryant. While Christel cites to various records, including Dr. Bryant's report, as well as her testimony, none of these were ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's RFC determination, essentially asking the court to reweigh the evidence.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Christel's medical records, the medical opinions, Christel's hearing testimony, and the ALJ's conclusions. R. R. 32–38.  The ALJ noted Christel's neck surgery, and that her symptoms improved following the surgery. R. 33. The ALJ also considered her continued complaints of back, hip, and ankle pain, and issues related to her RA, including pain and swelling, which were generally treated with physical therapy, NSAIDs medication, and Motrin. Id. The ALJ noted Dr. Bryant's report of a slow walk, but no assistive device, and neck pain, but normal elbows, wrists, and hands, with full muscle strength and grip strength, negative Tinel sign, and good finger-to-thumb approximation. R. 33, 516.

The ALJ's opinion specifies how the limitations in the RFC correlate with Christel's severe impairments. The ALJ explained that he limited Christel to light work with additional postural and exertional limitations "to address musculoskeletal weakness and pain due to her cervical herniation status post-fusion, lumbar degenerative disc disease, left ankle fracture, and RA." R. 33. Likewise related to her RA, the ALJ limited Christel's concentrated exposure to heat and humidity, due to reports that these environmental conditions exacerbated her symptoms. Id. The ALJ explained that he "limited [Christel] to the light exertional level" with environmental limitations including "avoiding concentrated exposure to extreme heat, humidity, [and] pulmonary irritants" to address her asthma symptoms. R. 34. The ALJ likewise explained that he limited Christel to occasional overhead reaching to address her shoulder issues, and limited her to the light exertional level with postural restrictions to accommodate her obesity. Id.

Further, contrary to Christel's argument, the ALJ adequately explained his consideration of Dr. Bryant's opinion. The ALJ wrote that he discounted Dr. Bryant's opinion regarding standing, walking, and manipulative limitations because these limitations are inconsistent with the treatment notes and history of conservative treatment. R. 35. Likewise, Dr. Bryant herself questioned Christel's credibility "as to the severity of her alleged complaints" and indicated she may not have been providing full effort on the range of motion test. R. 515. Accordingly, the ALJ noted that "Dr. Bryant's examination report questions [Christel's] effort." R. 35. Though neck surgery is not conservative treatment, following Christel's generally successful neck surgery, which occurred three months after her alleged onset date, she did follow a conservative treatment course of physical therapy and NSAID medication. R. 33. In her brief, Christel points to a selection of records, including examination notes, that she asserts support a more limited RFC and support Dr. Bryant's opinion. However, the ALJ did not ignore any of this evidence,

13

but instead provided a detailed medical history. Significantly, the role of this court, is not to reweigh the evidence, as Christel urges, or substitute its judgment for the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). For example, the ALJ specifically weighed the July 2012 Physical Work Performance Evaluation, completed by Adirondack Sports Medicine Therapy Center in New York, noting it was prior to the amended alleged onset date.

Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

**D. Subjective Allegations**

Christel argues that the ALJ's assessment of her allegations is not supported by substantial evidence, and that the ALJ failed to explain how her "pain and limitations due to her severe physical impairments" are still "consistent with the ability to perform a range of light work." Pl.'s Br. at 31, Dkt. 23.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[12] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[13] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the

---

[12] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[13] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical,

ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed discussion of Christel's medical history, along with Christel's own allegations, and the ALJ adequately supported his finding that her allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Christel's testimony at the hearing, including specifically her claims that her severe impairments caused her pain, stiffness, mobility issues, and required her to rest during the day. Contrary to Christel's argument, the ALJ discussed Christel's complaints and treatment related to her severe physical impairments of cervical herniation status post fusion, lumbar degenerative disc disease, RA, and left ankle fracture, and explained how the RFC accommodated these severe impairments. The ALJ noted that she reported largely resolved neck and arm pain following her April 2013 neck surgery, full range of motion and strength in her cervical spine, improved ankle pain by March 2015, and management of her RA with NSAID medication.  R. 33. However, the ALJ did not ignore other findings on exam and complaints, including swelling from RA and discomfort from heat and humidity, decreased range of motion

---

physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

in shoulders and lumbar spine, and low back pain and leg weakness resulting in difficulty exercising. Ultimately, the ALJ wrote that he limited Christel to:

> Light work with further postural and exertional limitations to address musculoskeletal weakness and pain due to her cervical herniation status-post fustion, lumbar degenerative disc disease, left ankle fracture and RA. [Christel] is further limited from concentrated exposure to extreme heat, humidity, due to reported exacerbation of her RA symptoms because of heat and humidity.

R. 33. This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Christel's subjective complaints with substantial evidence, and that Christel is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to

within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

      Entered: January 5, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge